UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WANDA BLANCHARD                                                                                  PLAINTIFF

V.                                                                   CIVIL ACTION NO. 4:07cv66 DPJ-JCS

GLOBAL EXPERTISE OUTSOURCING,
INC., D/B/A THE GEO CORP., INC.                                                                DEFENDANT

**ORDER**

This employment discrimination case is before the Court on Defendant Global Expertise Outsourcing, Inc.'s motion for summary judgment [34]. The Court, having considered the parties' submissions and applicable authorities, finds that Defendant's motion should be granted in part and denied in part.

**I.     Facts and Procedural History**

In July 2005, Defendant Global Expertise Outsourcing, Inc., doing business as the GEO Group, Inc. ("GEO"), hired Plaintiff Wanda Blanchard as a correctional officer at East Mississippi Correctional Facility ("EMCF") in Meridian, Mississippi. Plaintiff spent the majority of August 2005 in employee orientation and pre-service training. After completing training on August 26, Plaintiff was assigned to Housing Unit 4. Her immediate supervisors were Sergeants Bennett and Mason. Lieutenants Fairchild and Rivera were higher level supervisors with authority over Plaintiff.

Plaintiff alleges a pattern of continual harassment on the part of several co-workers that took place throughout her employment at GEO. According to her deposition testimony, the first instance of harassment for which she seeks redress occurred during her training period when she

entered a utility closet to retrieve supplies with a co-worker identified as Officer Ruffin.[1]  Upon entering the closet, Ruffin allegedly closed the door and expressed his desire to touch Plaintiff in a sexual manner.  Ruffin then attempted to put his hand down the front of Plaintiff's sweat pants in an effort to touch her vagina.  Although Ruffin did touch Plaintiff, she managed to wrestle his hand away and escape the supply room.  Ruffin allegedly told her, "Girl, you got my you know what hard, and you're going to sit on it later on.  I'm going to get it later on."  Blanchard Depo. at 29.  Plaintiff told several classmates and others about the incident and it appears that the situation was addressed as Ruffin never bothered Plaintiff again.

Immediately after completing her training, Plaintiff claims that several male officers, including Officer Kalendren Bonner, approached her and inquired about her personal relationships with men.  When Plaintiff ignored them, Officer Bonner accused Plaintiff of engaging in sexual activity with another female officer at GEO.  Later, Officer Bonner allegedly began a practice of grabbing Plaintiff's buttocks and her breasts, cussing at her, and calling her crude names which Plaintiff euphemistically described as "B" and "Stinky P__," among others.  *Id*. at 39.  Significantly, Plaintiff claims that the inappropriate touching and comments occurred in the presence of inmates, co-workers and even her superior officers.

In another incident, Plaintiff states that Bonner blocked a stairway, attempted to pull her onto his lap, made gestures simulating oral sex, and called her crude names after she pulled away

---

[1] Plaintiff refers to Ruffin as Officer Ruffin in the Complaint.  Complaint ¶ 6.a.  In her deposition, however, she calls him Sergeant Ruffin.  Blanchard Depo. at 30.  At no point, however, does Plaintiff allege that Ruffin was her supervisor, and based on the parties' submissions, it appears that Ruffin was not a supervisor for purposes of Title VII.

from him.  *Id*. at 53.  She also claims that Bonner incited the inmates to harass her after she complained of his behavior.  According to the testimony, Plaintiff was unable to conduct a head count because the inmates surrounded, touched, cussed, and chastised her for reporting Bonner.  *Id*. at 98.  She testified that the inmates pulled her hair, pushed her, and called her names like "maggot" and "whore."  *Id*.  Later, one inmate, who was serving a life sentence, grabbed Plaintiff and tried to pull her into his cell.  The inmate was wearing a condom on his otherwise exposed penis and attempted to remove Plaintiff's clothes while cussing and telling her, "[Y]ou're going to learn to keep you GD mouth closed while you're running around trying to tell on MF's . . . you told on Bonner . . . ."  *Id*. at 99, 113.

      Plaintiff missed several days of work after the incidents involving the inmates.  When she returned, Lt. Fairchild agreed to assign her to the kitchen.  She claims, however, that inmates and Bonner learned where she was working and threatened her again.  *Id.* at 105.  The inmates apparently told her they were going to "shank" her.  *Id*.  Plaintiff never worked another shift and submitted her letter of resignation to Human Resources on September 30, 2005, citing stress and child care as her reasons for resigning.  Her employment lasted approximately two months.

      Plaintiff testified that throughout this alleged history of harassment, she repeatedly reported Bonner's conduct to superior officers such as Sgt. Bennett, Sgt. Mason, Lt. Fairchild and Lt. Rivera, but that her complaints were ignored.  In fact, she states that two of her superior officers actually witnessed Bonner touch her breasts and laughed about it.  *Id*. at 132.  She further asserts that Lt. Fairchild moved Plaintiff from Bonner's working area at one point, but moved her back to his unit upon Bonner's request.  When Plaintiff asked Fairchild why he would honor such a request of a subordinate officer (Bonner), Fairchild laughed and stated, "My hands are tied."

*Id*. at 57-58.  Finally, the record suggests that Plaintiff attempted to submit several written complaints that were ignored.[2]

Plaintiff was contacted by an investigator regarding Officer Bonner's conduct shortly after resigning, and she later met with EMCF's Warden about Bonner's actions.  Bonner was apparently terminated for his actions toward Plaintiff and other female co-workers.  In November 2005, Plaintiff filed an EEOC charge.  She then filed the present action against GEO alleging sexual harassment and retaliation.  GEO has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

**II.     Analysis**

    A.     <u>Summary Judgment Standard</u>

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and

---

[2] The timing of these written complaints is not clear in the record.

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

B.    Hostile Work Environment

Plaintiff alleges that she was subjected to persistent sexual harassment which created a hostile working environment. To establish a hostile work environment claim, a plaintiff must show that: "(1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). The parties agree that Plaintiff meets the first three requirements of her prima facie case, so the Court focuses on the final two.[3]

---

[3]Plaintiff's Response to Defendant's Motion for Summary Judgment hints that she was forced to quit her position which could constitute a tangible employment action. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000). However, her Complaint does not appear to allege constructive discharge, and she failed to respond to Defendant's argument that she never asserted nor exhausted such a claim. Accordingly, the Court finds that this is not a discharge case.

        1.       Whether Harassment Affected a Term, Condition, or Privilege of Employment.

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill,* 433 F.3d at 434 (internal quotations and citations omitted). Moreover, the "severe *or* pervasive" test is disjunctive. Thus, egregious incidences of harassing conduct, even if isolated, can affect the terms and conditions of employment. *Harvill*, 433 F. 3d at 435. In making its determination, the court must consider the "totality of the circumstances," including the "frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Finally, the challenged conduct must be both objectively and subjectively offensive. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

In the present case, there can be no real dispute that the duration of the conduct was short. Plaintiff's entire tenure at GEO lasted less than two months, and she worked directly with the primary harasser on only a few occasions. However, the Fifth Circuit has found that a two month period of harassment can be sufficient to survive summary judgment. *See Mire v. Tex. Plumbing Supply Co., Inc.*, No. 07-20738, 2008 WL 2704573, at *4 (5th Cir. July 10, 2008). Plus, the number of incidents Plaintiff describes over this short period suggests that the alleged harassment was somewhat frequent. *Harris*, 510 U.S. at 21-22 (observing that frequency of conduct considered under totality of circumstances).

6

As for severity, Title VII is not a general civility code, and "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotations omitted). Moreover, there are decisions from the Fifth Circuit holding that isolated offensive touchings are not actionable, but the court affirmed summary judgment in some such cases based on a "severe *and* pervasive" standard. *See, e.g., Hockman*, 407 F.3d at 328-29 (holding that instances of teasing, several grabbings, and boorish remarks over a year and a half were not severe and pervasive). As later explained in *Harvill*, the test is "severe *or* pervasive" and therefore even a single incident, if sufficiently severe, can create a question of fact for the jury. 433 F.3d at 436 (finding jury question and holding that "deliberate and unwanted touching of [Plaintiff's] intimate body parts can constitute severe sexual harassment").

Although the harassment in the present case is probably less than that in *Harvill* it satisfies the test discussed in *Harris*. Plaintiff's two short months on the job allegedly resulted in repeated instances when male co-workers touched her buttocks and breasts, one instance where a co-worker apparently put his hand down the front of her pants in an attempt to touch her vagina, and another instance where a co-worker tried to pull her onto his lap while simulating oral sex. There is also circumstantial evidence in the record that Bonner prompted inmates to harass Plaintiff, including one inmate who attempted (or threatened) rape. Thus, the conduct was physically threatening and humiliating, and more than mere offensive utterances (though she also claims offensive utterances). *Harris*, 510 U.S. at 21-22. Finally, the record could support an inference that Bonner undermined Plaintiff's ability to perform her job. *Id.; see also Harvill*, 433

F.3d at 434 (noting that courts consider "whether the complained of conduct undermines the plaintiff's workplace competence"). According to the testimony, Plaintiff was offensively touched and ridiculed in front of other workers, supervisors and inmates. The record also supports an inference that Bonner incited the inmates to harass Plaintiff leading to an inability to control the inmate population. Viewed in the totality of the circumstances, the Court finds that Plaintiff has submitted sufficient evidence to create a genuine material issue as to whether the alleged conduct was sufficiently severe or pervasive.[4]

2. Whether Defendant Knew or Should Have Known of the Harassment and Failed to Take Prompt Remedial Action[5]

To meet the fifth element of the prima facie case, Plaintiff must show that GEO knew or should have known of the harassment and failed to take prompt remedial action to end it. The Fifth Circuit Court of Appeals has explained that the sufficiency of an employer's response to harassment depends on the facts of the case, including the remedial action taken and the severity of the harassing conduct. *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399-400 (5th Cir. 1996). Although an employer may avoid liability by taking prompt remedial action, the employer may nonetheless be held liable if such action was not reasonably calculated to stop the harassment. *Harvill*, 433 F.3d at 437. Furthermore, to impose liability on the employer, the

---

[4]Obviously, the Court has considered the record in the light most favorable to the non-moving party.

[5]Defendant argues that the *Ellerth/Faragher* defense shields it from liability. The *Ellerth/Faragher* defense, however, does not apply to hostile work environment claims based on sexual harassment by co-workers. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 411 (5th Cir. 2002). Though not clearly stated, it does not appear that Plaintiff was harassed by a supervisor. Accordingly, the Court focuses on the fifth element of the prima facie case. However, for the same reasons stated *infra*, the defense would fall short, at least as a matter of law.

8

employee must have availed herself of corrective measures provided by the employer, unless the employee believes reporting the harassment would be futile or that the company has objectively demonstrated that it has no intention of curtailing the harassment. *Woods*, 274 F.3d at 300-01.

The facts of this case, when viewed in a light most favorable to Plaintiff, suggest that Defendant did end some of the alleged harassment, but that other harassment was allowed to continue unabated. More specifically, the following allegations create questions of fact as to whether Defendant knew or should have known of the harassment; whether it acted "promptly"; and whether its actions were reasonably calculated to end the harassment. First, Plaintiff claims that a co-worker touched her breasts and ridiculed her in the presence of supervisors who laughed and allowed the conduct to continue. *See Williamson v. City of Houston, Tex.*, 148 F.3d 462, 465 (5th Cir. 1998) (affirming jury verdict and holding that supervisor's personal knowledge of harassment satisfied notice requirement). Second, Plaintiff testified that she unsuccessfully lodged verbal and written complaints with her immediate supervisors and with higher level supervisors. Third, Plaintiff claims that one supervisor, higher up the chain of command, laughed when she presented a written complaint about Bonner's alleged conduct and did not act on the complaint. Fourth, that same supervisor allegedly moved Plaintiff away from Bonner but then returned her to Bonner's work area at the alleged harasser's request. Finally, the harassment allegedly continued through her final day of employment.[6]

There is also a question of fact as to whether Plaintiff failed to take advantage of corrective measures for reporting harassment. While conceding that Plaintiff reported Bonner's

---

[6]Plaintiff's deposition contains other similar facts which would, if believed by a jury, demonstrate that Defendant knew or should have known about the conduct yet failed to act promptly and failed to take action to end the harassment.

actions to her supervisors, GEO contends that this alone was insufficient due to technical non-compliance with the procedures laid out in its employee handbook. *See Hockman*, 407 F.3d at 326 (affirming summary judgment and holding that plaintiff could not prove employer "failed to take prompt remedial action where she unreasonably failed to take advantage of corrective opportunities").

Two questions of fact preclude summary judgment on this theory. First, the record contains evidence of repeated efforts to complain at various levels of the organization, creating a material question as to whether further complaints would be futile. *See Harvill*, 433 F.3d at 437. Second, there is a question whether Plaintiff failed to comply with handbook procedures. The policy in existence when these events transpired stated, "Employees who believe they are the victims of harassment are to immediately contact their supervisor, management, or Corporate Human Resources." Plaintiff claims that her supervisors witnessed and condoned the harassment, so they knew about it immediately. She nevertheless complained verbally and in writing. Other more exacting standards GEO claims Plaintiff failed to satisfy appear to have been enacted after she quit.

Accordingly, the Court finds that questions of fact as to the fourth and fifth elements of the prima facie case preclude summary judgment in Defendant's favor on Plaintiff's Title VII sexual harassment claim.

B.  Section 1981

Plaintiff's Complaint pleads a claim under 42 U.S.C. § 1981. However, there is no apparent basis for such a claim and Plaintiff failed to respond to this portion of Defendant's motion. The motion is therefore granted.

C.      Retaliation

Plaintiff's final claim asserts that GEO unlawfully retaliated against her for reporting harassment. Like discrimination claims, the Court must analyze retaliation claims using the *McDonnell-Douglas* framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). However, Defendant argues that the burden of production never shifts in this case because Plaintiff failed to establish a prima facie case. The record suggests otherwise.

A prima facie case of retaliation requires proof that (1) the plaintiff engaged in protected activity; (2) was subjected to an adverse employment action; and (3) there was some causal link between the protected activity and the adverse action. *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citations omitted). Protected activities include "making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII," and any other opposition to unlawful discrimination. *Mota v. Univ. of Tex. Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001). The second element–adverse employment action–is satisfied if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The requirement that the action be "materially adverse" was designed to separate "significant from trivial harms." *Id.*; *see also Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). Finally, the causal link required by the third prong does not rise to the level of a "but for" standard at the prima facie stage. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

In this case, Defendant primarily attacks the factual predicate for Plaintiff's retaliation claim, and then generically states that no adverse employment action occurred and that causation is lacking. Other than stating the requirements for a prima facie case, the entirety of Plaintiff's response to this portion of the motion states: "Plaintiff testified that she reported sexual harassment on numerous occasion to her immediate supervisors, and subsequently, she would not have anyone assigned as a partner to perform an inmate head count and Plaintiff did not receive a radio during her employment at GEO." Plaintiff's Response at 3.

Starting with Plaintiff's allegation regarding her lack of a radio, even if this amounted to a "materially adverse" employment action, Plaintiff's response indicates that she never had a radio. *Id*. The Court's review of the record does not suggest otherwise, and Plaintiff provided no cites to the record. Thus, the action appears to have predated the protected activity, precluding a finding of causation. *See Green*, 284 F.3d 642 (observing that prima facie case requires some causal link between the protected activity and the adverse action) (citations omitted).

Although the radio allegation cannot support her prima facie case, the claim that Plaintiff was left understaffed on the floor of the unit does survive summary review. Defendant attempts to rebut this claim by raising several factual arguments aimed at establishing two key points: (1) that Plaintiff had sufficient assistance in the unit; and (2) that any lack of assistance was not causally related to protected activity. Plaintiff's response to this portion of Defendant's motion was, to put it politely, sparse, but the Court must still consider the record as a whole. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996). Here, the record includes excerpts from Plaintiff's deposition testimony that contradict portions of Defendant's fact-based

arguments regarding the staffing issue.  The Court cannot ignore this record evidence and finds that it creates questions of fact for the jury.

For example, Defendant argues that Plaintiff was not actually alone and that additional help was called when the inmates harassed her.  Defendant's Reply at 5.  Plaintiff testified, however, that although she had a picket officer, she was improperly left on the floor without a supervising officer when the inmate harassment occurred.  Blanchard Depo. at 43.

Defendant also asserts that Sgt. Bennett assisted Plaintiff in the unit, but got upset with her and left.  Defendant insists that Bennett's "actions [had] nothing to do with either Officer Bonner or Lt. Fairchild."  Defendant's Memorandum at 17.  However, in an excerpt from Plaintiff's deposition that Defendant excluded from its submission, she testified that Bennett was her acting sergeant at the time and was friends with Bonner.  According to the testimony, "she [Bennett] started to get mad at me *because I told her about Bonner*, and she didn't want to work with me anymore.  So she stopped working there on the unit.  I ended up getting left on the whole entire unit by myself."  Blanchard Depo. at 43 (emphasis added).  This testimony suggests a causal connection between protected activity and the allegation that she was left understaffed in the unit.

Further evidence of a causal connection is found in Plaintiff's testimony that she complained to Bennett after Bonner tried to pull her onto his lap while simulating oral sex.  Plaintiff testified that Bennett told her, "[Y]ou better be careful when you go to writing people up.  It come back to haunt you."  Blanchard Depo. at 54.  It is difficult to tell from the testimony, but one interpretation suggests that this exchange happened when Plaintiff and Bennett had their

13

altercation before Bennett left Plaintiff without a supervising officer on the floor of the unit. *Id*. at 54-55.

Finally, while there is no dispute that the cavalry arrived after the inmates accosted Plaintiff, question remains whether Defendant, for retaliatory purposes, placed Plaintiff in a dangerous situation. In other words, the question is not whether Defendant came to her rescue after she called for help, but whether she should have ever been in peril. All of this raises questions of fact.

Whether these fact questions are material depends on context. The Court can clearly envision instances where working alone would not constitute a materially adverse employment action. However, the Court must consider the circumstances. As observed by the United States Supreme Court:

> [T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others.

*Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 at 69 (internal citations and quotations omitted). In this case, the work environment was a prison. Plaintiff testified that she was left on the floor without a supervising officer in the unit where "all the bad people were," including inmates with life sentences. Blanchard Depo. at 43, 98. Viewing the evidence in the light most favorable to

14

her, there is a question of fact as to whether Plaintiff was denied the normal level of backup and whether such actions in the context of a prison unit "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Defendant's motion for summary judgment as to Plaintiff's retaliation claim is therefore denied.

### III.    Conclusion

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is denied as to Plaintiff's claims of sexual harassment and retaliation and granted as to Plaintiff's claim under 42 U.S.C. § 1981.

**SO ORDERED AND ADJUDGED** this the 17th day of November, 2008.

> s/ *Daniel P. Jordan III*
> UNITED STATES DISTRICT JUDGE